## MEEK v. HARRIS.

### [71 South. 1.]

THREATS. *Punitive damages. Right to recover.*

> Where a mayor commissioner and *ex-officio* justice of the peace acting in good faith and without malice or desire to oppress, informed plaintiff that her minor son was suspected of arson, and in a friendly manner advised her to take him and leave the city, he cannot be *held* for punitive damages in an action by her for threatening malicious prosecution, if any damages whatever can be recovered.

APPEAL from the circuit court of Jones county.

HON. J. M. ARNOLD, Judge.

Suit by Mrs. Lydia Harris against F. M. Meek. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Deavours & Hilbun,* for appellant.

Is the appellant, Meek, liable for an alleged threat to have appellee's son arrested and put in jail, when there is no allegation or proof that there was any attempt to put the threat into execution?

The true rule of law in cases of this character seems to be that if the court has jurisdiction of the person and of the offense charged that there can be no liability unless possibly, as some courts have held, the court is actuated by malice or corruption. The declaration does not allege that defendant had no jurisdiction of either the person or the offense.

In 29 Cyc., page 1443, paragraph 4, the rule is stated thus: "While officers are liable for negligence in the performance of ministerial duties, no such liability is recognized in the case of discretionary or judicial duties. There are generally three classes of officers who are pro-

tected by this rule. In the first place are judicial officers, that is officers holding regular courts for the decision of the cases. These officers when having jurisdiction are never liable for errors or mistakes of judgment, even if actuated by corruption or malicious motives . . . In the third place are the vast number of officers not holding courts, but discharging executive and administrative functions, whose discharge involves the exercise of judgment and discretion; such officers are not liable for a mistaken exercise of such discretion. In many of the cases on the liability of inferior judicial officers, and officers discharging quasi-judicial or administrative functions the opinions would seem to lay stress upon the absence of malice or corrupt intent as an important element in the determination of the immunity from liability. But in most cases what is said in the opinion is merely *dictum,* inasmuch as the actual decision did not recognize the liability.'' 23 Cyc, page 567, par. d; 28 Cyc., page 466; 1 Dillon on Municipal Corporations (5 Ed), page 771; *Wilcox* v. *Williamson,* 61 Miss. 310; *Bell* v. *McKinney,* 63 Miss. 187; *E. B. Thompson* v. *T. H. Jackson,* 27 L. R. A. 92; *Austin* v. *Brooman,* 14 L. R. A. 138; *Randall* v. *Brigham,* 19 Lawyers' Edition (United States Supreme Court Reports), page 285; See 24 Am. St. Rep. 137; *Pratt* v. *Gardner,* 48 Am. Dec. 625; *Calhoun* v. *Little,* 31 Am. St. Rep. 254; *Stone* v. *Graves,* 40 Am. Dec. 131; *Coleman* v. *Roberts,* 59 Am. St. 11.

The advocate, we are aware, sometimes becomes overzealous in the cause of his client; sometimes his judgment becomes warped. He cannot always be impartial. But we believe a cursory examination and study of this record will demonstrate that the appellant is entitled to a reversal of this case, and we respectfully submit that we cannot understand, we cannot comprehend, that sort of justice that would permit a judgment for any amount to stand against this appellant, who, according to appellee's own evidence, did nothing more than to threaten one who is not even a party to this suit.

*Halsell & Welch,* for appellee.

Counsel for defendant have been very diligent in this matter, and have tested what they concede to be every weak point in the plaintiff's case, and it has withstood their assaults before the court, and before the jury.

Whether correctly or not, we will not undertake to say, but one court has recently held that the parent can recover in behalf of the child for wrongs of this kind. The court will bear in mind however that the suit was not founded because of any requirement that the child should not be permitted to attend school, or be confined in the yard of the mother, but because of the latter threat, if the mother did not leave town with the child, the policeman would invade her home, and take the child to jail. Could a more grievous wrong be done anyone? In this land of liberty, where the humblest home is the castle of its inhabitants, though poverty abide there also, it is surprising when the facts of this case are considered, and it is remembered that the jury by their verdict forever settled the question in favor of the plaintiff, and accepted her theory and statement, that the verdict was for one thousand, six hundred dollars instead of a larger sum?

On page 6 of their brief beginning at the third paragraph, and from that point to the end, counsel devotes much time and labor trying to convince this court that this is an action against F. M. Meek, seeking to recover damages for an alleged threat on his part to arrest, and put Ledyard Harris, appellee's minor son in jail. But the mother is not seeking to recover for threats to the child. The fact is Meek as Mayor, ordered the plaintiff to leave Laurel with her minor son, and if she did not do so he would put the son in jail. Doesn't this order to leave Laurel mean pecuniary loss to appellee, and should she not have redress? Meek, according to Mrs. Harris, did not say to her, "Mrs. Harris your son, so rumor says, is a bad boy, and I think he would be better off on a farm,

or somewhere else, let me help you to arrange this." But he did not do this, he told her she must take her son and leave Laurel, and later, on another occasion, told her if she did not leave by Saturday, he would put her son in jail. The plaintiff testified this so frightened her she left Laurel at once. Doesn't this give her a right of action? The jury seems to have believed Mrs. Harris' statement, and disbelieved defendant's version. What greater wrong or injury could be done a poor, frail, delicate, little widow, with a minor son, and a frail, delicate mother sixty-five years old, all dependent upon this little widow's wages for support, they having no property except a modest little home, than to tell her she must leave her home and old mother, and take the son, and go out into the cold world an outcast, breaking up a happy family and leaving behind good friends. Had this been a man he would no doubt have told Meek to go to the hot place, but being a poor, frail, delicate woman, with no strong, manly arm upon which she could lean, these words and orders coming from the Mayor, the man in authority, struck terror to her heart, and she left Laurel. Appellants counsel contend in their brief that Meek was acting in his judicial capacity as Mayor. We, however, ask how on earth was Meek acting in his judicial capacity as Mayor; by what rights, or under what laws of the municipality, or under the constitution does he take upon himself the authority to order people to leave a certain place? This is a free country, and we are given the right of free speech, and freedom of individual action. We think the appellant in the latter part of his brief, from page six to the end, is trying to divert the court from the main issue, citing a lot of decisions having no bearing on the facts in this case. Meek was not holding any court, no warrant was made against her, then by what right or authority could he order her to leave the city of Laurel? We think counsel for appellant is right when he refers to Mayor Meek as an inferior tribunal, and we think the appellant must know that Meek while acting as Mayor of Laurel and wan-

dering around the streets, ordering people to leave town was in truth and in fact simply an "inferior tribunal." We think appellants classification very apt and appropriate, and we adopt it.

Section 1, article, 14 of the constitution of the United States says that "no state shall deprive a person within its jurisdiction the equal protection of the laws." In the face of this mandate we submit that for a Mayor to take upon himself the authority to order people whence they shall come and whither they shall go must think he has delegated authority above the state, and such authority as is possessed by some of the foreign, ancient or present rulers. Again, section 14 of the constitution of the state of Mississippi says "no person shall be deprived of life, liberty or property except by due process of law." For the Mayor of Laurel to order Mrs. Harris to leave Laurel is certainly depriving her of her liberty, in that he denies her the right to live in her own home, with her mother and son and make a living, he is depriving her of freedom of individual action.

HOLDEN J., delivered the opinion of the court.

Mrs. Lydia Harris, plaintiff in the court below and appellee here, sued for damages and obtained a judgment against F. M. Meek, defendant below and appellant here, for what seems to be an alleged threat of malicious prosecution of her son; and from this judgment, the defendant appeals to this court.

The appellee claimed in her declaration that in February, 1913, the appellant, F. M. Meek, while mayor commissioner and *ex officio* justice of the peace for the city of Laurel, willfully and maliciously ordered appellee to leave Laurel, and threatened to have her son, Ledyard Harris, arrested and put in jail if she did not take him away from Laurel. The appellee and her son, Ledyard Harris, sixteen years of age, were both joined as plaintiffs in the declaration; but upon the filing of a demurrer by defendant a nonsuit was taken by the plaintiff Ledyard Harris, leav-

ing it a suit by the appellee, Mrs. Lydia Harris, in her own right against the appellant for damages.

The plaintiff below testified, in substance, that F. M. Meek, the appellant, came to her and told her that he would have her son, Ledyard Harris, arrested and put in jail if she (Lydia Harris) did not take him away from Laurel. We copy the important part of appellee's testimony *verbatim* from the record:

"He said that he and all of his men were notified to arrest my boy the first time they caught him on the street, and put him in jail. We confined the boy strictly to my home premises for quite awhile. He finally told me after that time if I did not leave by Saturday he was coming to my home and arrest my boy and put him in jail. It scared me to think he would come to my home and arrest my boy and put him in jail, and I consented to leave with him. I was gone for three weeks."

The plaintiff's testimony was the only evidence introduced in her behalf. At this juncture in the trial the defendant moved to exclude the evidence of the plaintiff and to instruct the jury to return a verdict for the defendant, which motion was by the court overruled.

The appellant, F. M. Meek, was then introduced as a witness, and testified, in substance, that he was, at the time of the alleged conversation with the appellee, mayor commissioner of the city of Laurel, and that for some time previous there had been an unusually large number of incendiary fires in the city of Laurel, and that he, in conjunction with other citizens, had endeavored to discover the party causing the fires, and to that end had made up three hundred and forty-five dollars and employed a detective, one McKervey, to investigate the situation; that he was informed by the detective that Ledyard Harris, the son of the appellee, was the guilty party, and that upon receiving this information he sent for the appellee, with whom he was upon friendly terms, and when she arrived at the office, the detective, McKervey, told the appellee

that the evidence pointed strongly to her son as being the person who had caused the fires in Laurel, and that the detective said to her they wanted to put a stop to these fires and advised her, in a private and friendly way, that it would be best for her to take her son away from Laurel, as he was a young boy, and would do better with other associations and surroundings; that the appellee, then much distressed, asked the appellant what she should do about it, and he (appellant) advised and suggested to her in a kind and friendly way that it would be best for her to take the advice of the detective and take her boy away from Laurel, for awhile at least, and that that would probably cure the evil of the situation; that he advised and suggested to the appellee to take her boy away to some other field and away from his present surroundings, and that this would save her a good deal of trouble, because the grand jury would meet soon; that he gave her this advice in a friendly way in order to keep the boy out of trouble, and that he at no time threatened her nor the boy; that the appellee was a frequent visitor at the home of appellant, and often dined with his family, and that they were on friendly and cordial terms; that he had no malice or feeling against her, but, on the other hand, his feeling towards her was friendly and considerate; and that he had treated her as a neighbor and had no desire whatever to do a wrong to her or her boy, but was attempting to suggest or advise her in a way that was for her good and the good of her son. The son was subsequently indicted for arson. The appellee waited one year before filing suit. With this state of case before the court, the plaintiff was granted one instruction that the jury might find punitive damages for the plaintiff. No actual damages were claimed. The jury returned a verdict for the plaintiff in the sum of one thousand and six hundred dollars, as punitive damages.

We think the testimony shows conclusively that the appellant was acting in good faith, without malice, and with probable cause, and with no desire to oppress the ap-

pellee, but that his intentions were good. Therefore punitive damages cannot be recovered, if, indeed, any recovery whatever may be had. *Railroad* v. *Fite,* 67 Miss. 373, 7 So. 223; *Taft* v. *Taft,* 40 Vt. 229, 94 Am. Dec. 389; 12 Am. & Eng. Enc. 24, 25; 3 Black. Com. 120; *Grimes* v. *Gates,* 47 Vt. 594, 19 Am. Rep. 129. Under the facts in this case the verdict and judgment are erroneous.

*Reversed and remanded.*